IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL "MIGUEL" GUTIERREZ, individually,
and as Personal Representative of the ESTATE of
MAX JOE GUTIERREZ (Decedent),

        Plaintiffs,

vs.                                                                                          Civ. No. 14-0567 MCA/GBW

LT. SAM RODGRIGUEZ, *et al.*,

        Defendants.

### MEMORANDUM OPINION AND ORDER

This case is before the Court upon the County Defendants' Motion to Dismiss [Doc. 7]. The Court has considered the written submissions of the parties, the record in this matter, and the applicable law, and is otherwise fully advised.

**Standards Governing a Rule 12(b)(6) Motion to Dismiss**

Fed. Civ. P. Rule 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41 (1957). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court retired *Conley*'s test, replacing it with the following test: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). In applying this test, a

1

court accepts as true "all plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint, *Shrader v. A1 Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011); provided, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

**Background**

Applying the above standards, the Court will summarize the background of the case.  Plaintiff is the brother of Max Joe Gutierrez (Decedent).  Decedent was married to Defendant Jamie Gutierrez (Wife).  Wife and Defendant Bayard Police Department Lt. Sam Rodriguez were carrying on an extramarital affair.  Sometime after 9:00 p.m. during the evening of June 19, 2010, Decedent was killed by a shotgun blast to his head.  Immediately prior to his death, Decedent had been having a domestic dispute with Wife.  Wife was the only witness present in the room with Decedent when the shooting occurred.  Lt. Rodriquez and another BPD officer, Defendant Sgt. Willy Kerin, were present in Decedent's home at the time of the shooting, but did not witness the shooting.

Rodriguez and Kerin took control of the scene.  Initially, Wife reported that the shooting had been accidental.  Rodriguez and Kerin would later tell a field investigator from the Office of the Medical Investigator that the shooting was a suicide.  Rodriquez used his position to shield Wife from questioning.  Rodriguez allowed Wife, who had

been splattered with blood, to change her clothing and clean up, without first photographing the blood splatter on Wife and her clothing.  Grant County Deputy Sheriffs Raymond Tavison and Michael Leftault took control of the scene approximately an hour after the shooting.  Plaintiff arrived at the scene and confronted the investigating officers outside Decedent's home, accusing them of murder.  Leftault arrested Plaintiff for disorderly conduct.  After the physical scene investigation had been completed, Rodriguez directed the cleanup of the scene, obliterating bloodstains and other physical evidence.  A witness saw Wife and Rodriguez searching the Decedent's home in the early morning hours of June 20, 2011, well after the scene had been cleared.

      When the Decedent's home was released to relatives, a family member found Wife's cell phone.  Decedent's sister noted in the cell phone's search history a number of suspicious internet searches including:

    "how+to+cover+up+a+suicide"

    "how+to+clean+up+a+crime+sceen"

    "maximum+sent+for+second+degree+murder+in+NM"  and

    "how+to+poisen+with+out+a+trace."

Prior to his death, Decedent told a close friend that Wife had "drained" Decedent's bank account.

      On June 21, 2010, Leftault brought a disorderly conduct charge against Plaintiff in Bayard Magistrate Court.  Plaintiff received a conditional discharge, without an adjudication of guilt, on October 19, 2010.

On July 29, 2012, the Sixth Judicial District Attorney's Office declined Decedent's family members' request for further criminal investigation into Decedent's death.

**Discussion**

    **Count I**

The Court understands Count I as asserting a § 1983 backwards-looking, denial-of-access-to-courts claim. *See generally Christopher v. Harbury*, 536 U.S. 403 (2001). The Court agrees with the County Defendants that the individual County Defendants are entitled to qualified immunity as to Count I. As the opinion in *Lynch v. Barrett*, 703 F.3d 1153 (10th Cir. 2013), makes clear, "the question of whether an evidentiary cover-up by police officials may violate an individual's constitutional right to court access was not clearly established [as of March 2008]," *id.* at 1162. The Court's research indicates that there were no Supreme Court or Tenth Circuit Court of Appeals opinions subsequent to March 2008 that would have rendered the law governing backwards-looking, denial of access claims clearly established as of the date of the cover-up alleged by Plaintiffs. Indeed, *Lynch* itself left open the question of whether a backwards-looking denial of access claim is recognized in the Tenth Circuit. Thus, Count I founders on the second prong of qualified immunity analysis—*i.e.*, the requirement that Plaintiff show the scope of his right to court access was sufficiently clear such that reasonable officers in Tavison and Leftault's position would have understood that they were violating Plaintiff's rights by the manner in which they investigated Decedent's death. *See Lynch*, 703 F.3d at 1162.

As to the County entity Defendants, the Board of County Commissioners of Grant County ("the Board") and the Grant County Sheriff's Department ("the Sheriff's

4

Department), Count I fails in numerous respects. Under established Supreme Court and Tenth Circuit authority, to hold the County entities liable, Plaintiff first must plead facts showing that a County officer—Tavison or Leftault—violated Plaintiff's right of access to the courts. *See Shue v. Laramie County Detention Ctr.*, 594 Fed. Appx. 941, 943-44 (10th Cir. 2014) (citing *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001)). Such a claim requires Plaintiff to allege facts showing not only that Tavison and Leftault failed to preserve evidence of the cause of Decedent's death, but also *that they did so with a sufficiently culpable state of mind. See Waldron v. Drury*, 2006 WL 1749391*5-6 (D. Colo. 2006) (discussing *mens rea* required by denial-of-access claim). The exact *mens rea* required by a denial of access claim is not entirely clear. *See id.*; *Crawford-el v. Britton*, 951 F.2d 1314, 1318 (D.C. Cir. 1991). But whatever the standard may be, "[i]t is well established that mere negligence cannot support § 1983 claims that are premised on the denial of due process or access to the courts." *Mills v. Connors*, 319 Fed. Appx. 747, 749 (10th Cir. 2009).[1] Here, the complaint is entirely lacking in allegations showing that Tavison and Leftault acted with the requisite culpable state of mind. In particular, the complaint does not allege facts plausibly suggesting that Tavison and Leftault knew, or even should have known, that Rodriguez was having an affair with Wife. Without knowledge of the affair, Tavison and Leftault would have had no reason to suspect a conflict of interest that called into question Rodriguez's ability to conduct a thorough and impartial investigation of Decedent's death. At best, the complaint makes out a case that

---

[1] Section 1983 does not itself contain a state-of-mind requirement separate from the state of mind required to established the underlying violation of federal law. *Parratt v. Taylor*, 451 U.S. 527, 534 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)..

Tavison and Leftault may have been negligent in their handling of the crime scene, a state of mind that is insufficient to support a claim of denial of access to the courts.

Further, Plaintiff's complaint shows that Plaintiff does not understand basic principles of municipal liability. To make out a claim that the County entity defendants are liable, Plaintiff must allege "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Department*, 717 F.3d 760, 769 (10th Cir. 2013). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). "To establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Schneider*, 717 F3d. at 770. The state of mind required to establish municipal liability is "deliberate indifference" as to the "known or obvious consequences" of the municipality's action. *Id.* Under these standards, Plaintiff has come nowhere near pleading a plausible claim of municipal liability against the Board or the Sheriff's Department. Plaintiff mistakenly assumes that these entities can be held liable under a *respondeat superior* theory. [Doc. 1, Complaint, ¶ 4]. It is settled beyond question that a municipality may not be held vicariously liable under § 1983 for its employees' actions. *Connick*, 131 S. Ct. at 1359. Plaintiff's mistaken reliance on *respondeat superior* may explain why Plaintiff failed to allege the elements required to establish municipal liability. Most obviously Plaintiff has not identified the particular policies or customs of the Board or the Sheriff's

Department that caused the alleged inadequate investigation. This defect by itself requires dismissal of Count I as to the Board and the Sheriff's Department.

**Count II**

Count II alleges a conspiracy to commit homicide. There are no allegations that plausibly suggest that the County Defendants were a part of this conspiracy.

**Count III**

Count III is a First Amendment retaliation claim.  The County Defendants correctly note that Plaintiff's claim is governed by the three-year statute of limitations for personal injury actions, NMSA 1978, § 37-1-8. [Doc. 7 at 8, citing *Mondragon v. Thompson*, 519 F.3d 1078,1082 (10th Cir. 2008)]   As the County Defendants also correctly note, Plaintiff's cause of action for retaliation accrued "when the plaintiff has a complete and present cause of action." [*Id.* quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotation marks omitted)]  The Court concludes that Plaintiff's cause of action for retaliatory arrest accrued no later than June 21, 2010, when Plaintiff was charged in magistrate court,  *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011), and by operation of § 37-1-8 was time-barred as of June 21, 2013, well before the date that Plaintiff filed his complaint in this action.

In apparent anticipation of a statute of limitations defense, Plaintiff refers to the doctrine of fraudulent concealment. [Doc. 1, Complaint, ¶ 8 (citing *Garcia v. LaFarge*, 119 N.M. 532, 534 (1995)] The problem with Plaintiff's reliance on fraudulent concealment is that the allegations of the Complaint demonstrate that there was no concealment with respect to his claim of retaliation. As early as June 19, 2010, Plaintiff

knew that he had accused law enforcement officials of complicity in the murder of Decedent and that he had been arrested for disorderly conduct in response.  By June 21, 2010, he knew that Leftault had brought a disorderly conduct charge in magistrate court. Under the facts alleged in the Complaint, the allegedly wrongful retaliatory act—charging Plaintiff with disorderly conduct in response to his criticism of law enforcement officials—was known to Plaintiff by June 21, 2010. As previously noted, the statute of limitations ran as to Count III no later than June 21, 2013, well before Plaintiffs filed the instant action.

**Count IV**

Count IV is brought under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1, *et seq.*, alleging battery resulting in the wrongful death of Decedent.  The infirmity with respect to this Count as applied to the County Defendants is the complete absence of allegations plausibly linking these Defendants to Decedent's death.   Tavison and Leftault arrived on the scene after Decedent had been shot and killed.  There are no allegations that plausibly suggest that the County Defendants breached a duty owed to Decedent or that they could have prevented the shooting that resulted in Decedents death.

**Count V**

Count V alleges battery and wrongful death against Rodriguez and Wife by causing or failing to prevent Decedent's death by suicide. This Count does not implicate the County Defendants.

**Count VI**

Count VI alleges battery and wrongful death against Wife. This count does not implicate the County Defendants.

**Count VII**

Count VII alleges that the City of Bayard, the Board, and the Sheriff's Department (1) caused Decedent's death and (2) deprived Plaintiff of access to court by failing to conduct a competent investigation of Decedent's death.

With respect to the first injury, Decedent's death, Count VII alleges that "[w]hether decedent's death was caused by homicide, accident, or suicide, the City of Bayard and Board of County Commissioners of Grant County proximately caused the death by negligently hiring, retaining, supervising, and training Defendant Sam Rodriguez, and all other individual law enforcement officers involved in the incident and subsequent investigation." As applied to the Board and the Sheriff's Department these allegations are insufficient, if not frivolous. According to the Complaint, County employees became involved only *after* the shooting occurred. Obviously, the post-mortem investigation of Decedent's death cannot be the proximate cause of Decedent's death.

Count VII also alleges that the Board and the Sheriff's Department are responsible for the inadequate investigation into Decedent's death, which deprived Plaintiff of the Constitutional right of access to the courts. If Plaintiff means to assert this claim as a purely federal claim under § 1983, it is subject to dismissal for the reasons given by the Court in its discussion of Count I. However, Count VII can also be understood as asserting an NMTCA claim for the deprivation of a right secured by the United States

Constitution—*i.e.*, the right of access to the courts. Under that theory, the enabling statute is the NMTCA, NMSA 1978, §§ 41-4-1 *et seq.*, not § 1983, and accordingly, principles specific to § 1983 claims do not necessarily apply. Under the NMTCA, the governmental entity for which immunity is waived may be held liable under a statutory version of *respondeat superior*, § 41-4-4(D)(2), without regard to the elements of municipal liability that must be shown to hold a governmental entity liable for the conduct of its employees under § 1983. Nonetheless, even under this simpler, state-law regime, Plaintiff's claim fails for a reason the Court has previously noted in its discussion of Count I: the absence of allegations showing that Deputies Tavison and Leftault acted with the requisite culpable state of mind. Because Plaintiff has failed to plead a viable predicate claim against Deputies Tavison and Leftault, his derivative claim against the Board and the Sheriff's Department also fails.

**Conclusion**

For the reasons given above, the Complaint will be dismissed as to all County Defendants.

Federal civil rights litigation in general, and municipal liability cases in particular, present many difficult issues. If Plaintiff's counsel is inclined to seek leave to file an amended complaint, counsel should inform himself of the relevant principles governing his claims. He then needs to consider how those principles apply to the conduct of each defendant. Any proposed amended complaint must reflect the research and analysis necessary to understand and apply the governing legal principles to the facts of this case.

**WHEREFORE, IT HEREBY IS ORDERED** that County Defendants' Motion to Dismiss [Doc. 7] is **granted** and the Complaint is **dismissed** as to these Defendants.

**So ordered this 22nd day of May, 2015.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge